# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 16-333V
Filed: July 5, 2017
UNPUBLISHED

| | |
|---|---|
| SHELLY M. PINCKARD,<br><br>              Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>              Respondent. | Special Processing Unit (SPU);<br>Attorneys' Fees and Costs |

*Daniel Mark Soloway*, Soloway Law Firm, Pensacola, FL, for petitioner.
*Ryan Daniel Pyles*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Dorsey,** Chief Special Master:

On March 15, 2016, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleged that she suffered a left shoulder injury following her September 19, 2013 influenza vaccination. On February 15, 2017, the undersigned issued a decision awarding compensation to petitioner based on respondent's proffer. (ECF No. 29). Petitioner now moves for attorneys' fees and costs, which are awarded in the amount of $84,748.25, reduced from $108,471.18, for the reasons described below.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**I.      Procedural History**

On May 17, 2017, petitioner filed a motion for attorneys' fees and costs.  (ECF No. 33).  Petitioner requests attorneys' fees in the amount of $96,958.50 and attorneys' costs in the amount of $11,512.68 for a total amount of $108,471.18.  *Id.* at 6.  In compliance with General Order #9, petitioner has filed a signed statement indicating petitioner incurred no out-of-pocket expenses.

On May 18, 2017, respondent filed a response to petitioner's motion.  (ECF No. 34).  Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs."  *Id.* at 1.  Respondent adds, however, that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case."  *Id.* at 2.  Respondent "respectfully recommends that the Chief Special Master exercise her discretion and determine a reasonable award for attorneys' fees and costs."  *Id.* at 3.

On June 22, 2017, the staff attorney managing this case held a status conference on the undersigned's behalf to seek further clarification of petitioner's counsel's billing records. (ECF No. 35.)

**II.     The Special Master's Authority to Determine the Amount of Fees and Costs**

Since the petition for compensation was successful, petitioner is entitled to *reasonable* attorneys' fees and costs. *See* § 15(e)(1) (emphasis added).  Reasonable attorneys' fees and costs in Vaccine Act cases are determined using the lodestar approach, which begins with an assessment of a reasonable hourly rate multiplied by a reasonable number of hours expended in the case.  *Avera v. HHS*, 515 F.3d 1343,1347-48 (Fed. Cir. 2008.)

The determination of the amount of reasonable attorneys' fees is within the special master's discretion. *See, e.g., Saxton v. HHS,* 3 F.3d 1517, 1520 (Fed. Cir. 1993).  Special masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. HHS*, 22 Cl. Ct. 750, 753 (Fed. Cl. 1991). Moreover, special masters are entitled to rely on their own experience and understanding of the issues raised. *Wasson v. HHS*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991), *aff'd in relevant part,* 988 F.2d 131 (Fed.Cir.1993) (per curiam).

Petitioner "bears the burden of establishing the hours expended" and the reasonableness of the requested fee award. *Wasson,* 24 Cl. Ct. at 484. Notwithstanding respondent's failure to raise any specific objections to petitioner's fee application, "the Special Master . . . [is] not limited to endorsing or rejecting respondent's critique." *Duncan v. HHS*, No. 99-455V, 2008 WL 4743493 (Fed. Cl. 2008).  Furthermore, "the Special Master [has] no additional obligation to warn petitioners that [she] might go beyond the particularized list of respondent's challenges." *Id.*

The undersigned has reviewed the billing records submitted with petitioner's request. In the undersigned's experience, the requested hourly rates appear reasonable; however, for the reasons described below, the undersigned finds the hours billed in this case to be excessive.

## III.   Determining a Reasonable Number of Hours

In determining the amount of reasonable hours, a special master has discretion to exclude hours expended that are "'excessive, redundant, or otherwise unnecessary'" based on his or her experience or judgment." *Hocraffer v. HHS*, No. 99-533V, 2011 WL 6292218, at *3 (Fed. Cl. Nov. 22, 2011). The fee applicant bears the burden of documenting hours that are reasonable and the special master is not obligated to evaluate a fees petition on a line-by-line basis. *Id.* at *3, 13. Rather, particularly where billing entries are cryptic or inadequately described,[3] the Special Master may determine whether the claimed hours are reasonable based on her experience and the context of the Vaccine Program. *Wasson v. HHS*, 24 Cl. Ct. 482, 483-84 (Fed. Cl. 1991), *aff'd* 988 F.2d 131 (Fed. Cir. 1993). That is, special masters are permitted to use "a global – rather than line-by-line – approach to determine the reasonable number of hours expended." *Hocraffer*, 2011 WL 6292218, at *13.

In that regard, the undersigned notes that the amount of attorneys' fees requested in this case is very high compared to similar SPU cases which have resolved quickly and informally without a hearing. *See, e.g. J.B. v. HHS*, No. 15-67V, 2016 WL 4046871 (Fed. Cl. Spec. Mstr. July 8, 2016)(noting based on a review of over 300 SPU cases that such cases typically incur less than $64,000.00 in attorneys' fees and costs.). Like the instant case, the petitioner in *J.B.* received an unusually high award. The attorneys in that case argued that their high fees were justified by the result. The undersigned rejected that argument, noting that the size of petitioner's award does not equate to the complexity of the case given that the case resolved quickly and without significant litigation within the Special Processing Unit. *Id.*, at *6-7.

Thus, although the undersigned acknowledges that this case involved some complexity regarding petitioner's damages, it is also worth stressing that this case was highly streamlined, resolving as a conceded case within one year of filing. With that

---

[3] Attorneys are cautioned about such billing practices in the *Guidelines for Practice Under the National Vaccine Injury Compensation Program* (available on the court's website at http://www.cofc.uscourts.gov/sites/default/files/GUIDELINES-FOR-PRACTICE-4212016.pdf). Section X, Chapter 3, explains the requirements of an application for fees and costs, including the instruction that "[c]ontemporaneous time records should indicate the date and specific character of the service performed." *Vaccine Guidelines*, p. 68. Attorneys are further advised that "[e]ach task should have its own line entry indicating the amount of time spent on that task" and that "[l]umping together several unrelated tasks in the same time entry frustrates the court's ability to assess the reasonableness of the request." *Id.*

context in mind, the undersigned has identified a number of specific issues, discussed below, which contribute to the excessive billing in this case.

## IV.  Problems Identified in the Billing Records

### a. Excessive or Redundant Billing

A significant factor contributing to the high cost of attorneys' fees in this case appears to be excessive or redundant billing. Upon the undersigned's review, there appears to be a pattern of such overbilling within the records.

For example, in January and February of 2014, Mr. Soloway spent 4.5 hours engaged in initial meetings in person and via telephone with petitioner and her husband prior to beginning work on this case. (ECF No. 33-5, p. 1.) His associates, Ms. Corkill and Mr. MacLaren, each spent 2.5 hours conducting "initial meetings" with the clients. (ECF No. 33-6, p. 1; 33-7, p. 1.) The undersigned finds these client intake meetings to be excessive. Notably, the billing records suggest that these extensive meetings took place prior to counsel's obtaining of medical records or the receipt of any documents from the client. The billing records also suggest that Ms. Corkill's and Mr. MacLaren's initial client meetings occurred prior to being assigned to the case by Mr. Soloway on February 20, 2014.

Review of medical records in this case was also excessive. Mr. Soloway billed 10.45 hours for review of medical records in this case. Additionally, Ms. Corkill billed 15.75 hours reviewing medical records and Mr. MacLaren a further 9.8 hours. Much of this review appears to be redundant. For example, Mr. Soloway billed 1.3 hours for the review of records by Drs. Nall and Davis on March 4, 2014. (ECF No. 33-5, p. 1.) The next day Ms. Corkill billed an additional .9 hours reviewing records from the same treaters. (ECF No. 33-6.) Based on the undersigned's review, four different medical providers had their records separately reviewed by two of the three attorneys working on this case. The records of five additional providers were separately reviewed by all three attorneys. Mr. MacLaren billed .5 hours reviewing medical records more than a month after judgment was entered in this case. (ECF No. 33-7, p. 3.)

The undersigned also questions the 32.15 hours billed by Mr. Soloway to resolve a subrogation issue raised in the case.[4] Much of Mr. Soloway's time was devoted to case law research which likely could have been done by his associates. Indeed, Ms. Corkill billed a further 3 hours devoted to this issue.

---

[4] Based on the representations counsel made during the status conference held June 22, 2017, the undersigned is satisfied that Mr. Soloway's efforts in this regard were necessary to the resolution of damages in this case; however, that is a separate question from whether the hours expended were reasonable.

4

The undersigned reduces all of the above-identified hours[5] by half. This results in a reduction of **23.6** hours from Mr. Soloway's billing, **10.6** hours from Ms. Corkill's billing, and **6.2** hours from Mr. MacLaren's billing.[6]

### b. Inappropriate or Non-compensable Activities

A further deficiency in counsels' billing records is the inclusion of many hours billed for activities which are not appropriately charged to the Vaccine Program. The undersigned will not compensate counsel for these hours.

Ms. Corkill billed 1.4 hours researching the admission requirements for the U.S. Court of Federal Claims bar. (ECF No. 33-6, pp. 2-3.) She also billed .45 hours researching opposing counsel, Mr. Pyles. (*Id.*, p. 5.) Mr. Soloway similarly billed 1.25 hours researching Mr. Pyles as well as consulting Wall Street Journal articles about increases in claims filings. He also spent 5.25 hours researching the file of a prior Vaccine case he had prosecuted. (ECF No. 33-5, p. 1.)

Ms. Corkill's research into court admission constitutes professional development and is therefore not compensable. It is well established that attorneys may not be compensated for professional development concerning the Vaccine Program. *See, e.g., Lord v. HHS*, No. 12-255V, 2016 WL 3960445, at *4 (Fed. Cl. Spec. Mstr. June 30, 2016). Nor does the undersigned find it appropriate for counsel to bill for research regarding opposing counsel or into *counsel's own* prior case. If these hours were meaningfully spent, they are at best similarly characterized as professional development.

Thus, the undersigned further reduces Mr. Soloway's billing by **6.5 hours**. Ms. Corkill's billing is reduced by **1.9 hours**.

### c. Travel Time

Mr. Soloway billed 9 hours of travel time on August 21, 2014.[7] (ECF No. 33-5; ECF No. 35.) An additional billing entry of 2.75 hours dated January 5, 2017, includes an unspecified amount of travel time.[8] (ECF No. 33-5, p. 11.) This accounts for **11.75**

---

[5] That is, 47.1 hours by Mr. Soloway, 21.25 hours by Ms. Corkill, and 12.3 hours by Mr. MacLaren.

[6] All reductions throughout this decision are rounded to the nearest tenth of an hour.

[7] Although the billing entry shows one entry including both travel time and preparation for the taking of Dr. Greer's sworn statement, Mr. Soloway orally amended this billing entry during the status conference held June 22, 2017, to clarify that 9 of the 11 hours were spent travelling. Respondent had no objection to the oral amendment. (*See* ECF No. 35.)

[8] Since the amount of travel time is not specified and there is a separate billing entry of 2.75 hours for the taking of Dr. Seller's sworn statement which includes an identical description of activity, the undersigned will treat the entirety of this entry as travel time. (ECF No. 33-5, p. 11.)

hours of Mr. Soloway's billing in this case. The undersigned reduces Mr. Soloway's billing rate by 50% for this time spent travelling. *See, e.g., Hocraffer,* 2011 WL 3705153, at *24 (noting that "Special masters consistently award compensation for travel time at 50% of the billing rate in the Vaccine Program.").

### d. Inefficient Use of Attorney Time and Inscrutable Billing Entries

Another significant issue permeating the billing records in this case is counsel's inefficient use of attorney resources. Upon the undersigned's review, many of the tasks for which counsel has billed would have been better handled by more junior members of counsel's team, resulting in inflated attorneys' fees. Determining the exact extent of this issue is made more difficult by the nature of counsel's records, which often make it difficult to ascertain what the attorneys in this case were doing. The associate billing records, in particular, were often vague and difficult to understand.

As noted above, despite having assigned two associate attorneys to this case, Mr. Soloway nonetheless billed significant time reviewing medical records and researching case law regarding subrogation. This issue, however, is not limited to the above-discussed entries. For example, on February 7, 2017, Mr. Soloway, the most senior attorney on this case, billed 4.5 hours for sorting a box of receipts related to petitioner's medical expenses. (ECF No. 33-5, p. 12.)

Mr. Soloway also included several .25 hour billing entries for the purpose of authorizing invoices for medical records. (See, e.g. ECF No. 33-5, p. 2.) Mr. Soloway billed .25 hours to authorize an invoice for unspecified "mileage." (ECF No. 33-5, p. 3.) Additionally, throughout the course of this case, Ms. Corkill billed a total of 1.2 hours for generating fax cover sheets, document requests, and case captions. (ECF No. 33-6, *passim.*) She also billed .75 hours for traveling to pick up records. (ECF No. 33-6, p. 3.) These activities are secretarial in nature and are not compensable. *See, e.g. Mooney v. HHS*, No. 05-266, 2014 WL 7715158, at *11 (Fed. Cl. Spec. Mstr. Dec. 29, 2014)(noting that "tasks which are secretarial in nature represent overhead expenses and are thus not compensable.")

Moreover, the undersigned finds it particularly difficult to resolve this concern given the state of the billing records generally. In some instances, Mr. Soloway has combined multiple activities into one billing entry, making it difficult to separate appropriate and inappropriate billing activity. For example, on March 17, 2016, Mr. Soloway billed one hour in a single entry for reviewing both the medical record exhibits to be filed as well as the court's rules for filing medical records. The undersigned will not compensate Mr. Soloway for review of the court's filing procedures, but might otherwise have found a substantive review of exhibits to be reasonable.

There are also many entries which are too vague, leaving the undersigned unable to determine the nature of the task being performed. For example, on June 3, 2014, Ms. Corkill billed .8 hours under the category of reviewing medical records, but

6

included a subject which instead suggests a telephone call with an unspecified individual. (ECF No. 33-6, p. 2.) Both Ms. Corkill and Mr. MacLaren at separate times included billing entries for the creation of a "blank pleading." (ECF No.33-6, p. 7; ECF No. 33-7, p. 3.) Mr. Corkill included a billing entry labeled only as "AUTH-Ours." (ECF No. 33-6, p. 1.) Other entries by Ms. Corkill are suggestive of potentially duplicative entries. For example, on March 9, 2016, Ms. Corkill included two separate one hour entries for a meeting with petitioner. (ECF No. 33-6, p. 5.)

In light of the above-described inefficiencies and billing deficiencies, separate and apart from the previously addressed reductions, the undersigned finds that a further 5% reduction in counsel's remaining billing is warranted. As noted above, the undersigned is not required to perform a line-by-line analysis of the billing records. *Hocraffer*, 2011 WL 6292218, at *13. Moreover, Special Masters have previously reduced fees globally for insufficient billing practices. *See, e.g. Stone v. HHS*, No. 90-1041V, 2010 WL 3790297, at *5 (Fed. Cl. Spec. Mstr. Sept. 9, 2010)(deducting 10% from requested hours due to excessive and vague billing).

Mr. Soloway billed 179.5 hours. The undersigned previously reduced Mr. Soloway's billing by 23.6 hours for excessive or redundant billing, 6.5 hours for non-compensable activities, and otherwise addressed 11.75 hours of travel time. These reductions result in net billing of 137.65.[9] Reducing this amount by an additional 5%, the undersigned finds a reduction of **6.9** hours to be appropriate.

Ms. Corkill billed 93.65 hours. The undersigned previously reduced Ms. Corkill's billing by 10.6 hours for excessive or redundant billing and 1.9 hours for non-compensable activities. This results in net billing of 81.15 hours. Reducing this amount by an additional 5%, the undersigned finds a reduction of **4.1** hours to be appropriate.

Mr. MacLaren billed 47.15 hours. The undersigned previously reduced Mr. MacLaren's billing by 6.2 hours for excessive or redundant billing. This results in net billing of 40.95 hours. Reducing this amount by an additional 5%, the undersigned finds a reduction of **2.0** hours to be appropriate.

### V.     Attorney Costs

Petitioner's counsel requested reimbursement in the amount of $17.36 for the cost of obtaining medical records from Andrews Orthopedic. (ECF No. 33-9, p. 1.) Invoices attached to the motion, however, indicate only a charge of half that amount ($8.68) for these records. Thus, a reduction of $8.68 is needed. Additionally, counsel requests reimbursement in the amount of $552 for Ms. Corkill's and Mr. MacLaren's admission to the U.S. Court of Federal Claims bar. Such expenses are not recoverable.

---

[9] Although Mr. Soloway's 11.75 hours of travel time do not represent a reduction of hours billed, they have been subtracted from his total billing for purposes of this calculation because they have been previously addressed via rate reduction and are not being further reduced by 5%.

*See, e.g., Velting v. HHS*, No. 90-1432, 1996 WL 937626, at *1-2 (Fed. Cl. Spec. Mstr. Sept. 24, 1996).

The undersigned otherwise finds no cause to reduce any of the other costs. Thus, the undersigned reduces petitioner's requested costs by **$560.68**.

## VI.   Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 15(e). Based on the reasonableness of petitioner's request, the undersigned **GRANTS** petitioner's motion for attorneys' fees and costs in a reduced amount as follows:

Attorneys' Fees:

Mr. Soloway:

| | |
|---|---|
| Original Hours Billed: | 179.15 |
| *Less*: | |
| Excessive hours: | - 23.6 |
| Non-compensable: | - 6.5 |
| Travel *billed at full rate*: | - 11.75 |
| Inefficiency: | - <u>6.9</u> |
| Total (full rate) Hours Allowed: | 130.4 |
| *Plus*: | |
| Total (travel rate) Hours Allowed: | 11.75 |
| 130.4 *$350 per hour = | $45,640.00 |
| 11.75 *$175 per hour = | <u>$2,056.25</u> |
| Mr. Soloway's Total: | **$47,696.25** |

Ms. Corkill:

| | |
|---|---|
| Original Hours Billed: | 93.65 |
| *Less*: | |
| Excessive hours: | - 10.6 |
| Non-compensable: | - 1.9 |
| Inefficiency: | - <u>4.1</u> |
| Total Hours Allowed: | 77.05 |
| 77.05 *$225 per hour = | **$17,336.25** |

Mr. MacLaren:

    Original Hours Billed:        47.15

    *Less*:
        Excessive hours:        - 6.2
        Inefficiency:        - <u>2.0</u>
    Total Hours Allowed:        38.95

    38.95 *$225 per hour =        **$8,763.75**

**Total Attorneys' Fees Awarded:**        **$73,796.25**

Attorneys' Costs:

    Original request:        $11,512.68
    Less reductions:        - <u>$560.68</u>
**Total Attorneys' Costs Awarded:**        **$10,952.00**

***Overall Total Awarded:***        ***$84,748.25***

**Accordingly, the undersigned awards the total of $84,748.25[10] as a lump sum in the form of a check jointly payable to petitioner and petitioner's counsel Daniel Mark Soloway, Esq.**

The clerk of the court shall enter judgment in accordance herewith.[11]

**IT IS SO ORDERED.**

                                            <u>**s/Nora Beth Dorsey**</u>
                                            Nora Beth Dorsey
                                            Chief Special Master

---

[10] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v.HHS,* 924 F.2d 1029 (Fed. Cir.1991).

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.